IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY NUTTALL, | ) | CASE NO.: 1:20-CV-1266 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| PROGRESSIVE PARMA CARE CENTER, | ) | **MEMORANDUM OPINION AND** |
| LLC dba PARMA CARE CENTER, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motions for Summary Judgment of Defendant, Progressive Parma Care Center, LLC ("Parma Care Center" or "Defendant") (ECF #18) and Plaintiff, Kelly Nuttall ("Ms. Nuttall" or "Plaintiff") (ECF #20). Both parties filed Briefs in Opposition (ECF #21 and #22) and Defendant filed a Reply in Support of its Motion. (ECF #23). After careful consideration of the issues and a full review of the filings and all relevant authority, Defendant Parma Care Center's Motion for Summary Judgment (ECF #18) is GRANTED.

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff, Ms. Nuttall was employed as an Activities Director by Defendant, Parma Care Center, a residential skilled nursing facility, beginning on or around January 21, 2016. (Johnson Dep., p. 13; Nuttall Dep., p. 54). The Activities Director is an active member of an interdisciplinary team and is required to continuously interact with residents and staff and attend resident care conferences. (Nuttall Dep., pp. 51-53). The Activities Director's responsibilities include planning

---

[1] The facts as stated in this Memorandum Opinion and Order are taken from the parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

1

and conducting resident council meetings and functions, recruitment, scheduling, supervision, and additional organization of events and activities. (*Id.*). Pursuant to Ohio law, skilled nursing facilities are required to employ an activities program staff member. (*See* Ohio Admin. Code 3701-17-08(E)(1); Johnson Decl. ¶ 14).

Mr. Matthew Johnson ("Mr. Johnson") oversees Parma Care Center's operations as its Executive Director and served as Plaintiff's direct supervisor during the course of her employment with Defendant. (Johnson Dep., p. 14; Johnson Decl. ¶ 4). Parma Care Center is an employer covered by the Family and Medical Leave Act (the "FMLA") and provides its employees, including Ms. Nuttall, with a general notice and explanation of FMLA leave in its Employee Handbook. Defendant also keeps a Federal Notice of Employee Rights posted in the facility in a communal work area. (Johnson Decl. ¶¶ 5-6). Parma Care Center's FMLA policy is overseen by Mr. Johnson and Ms. Davis, Defendant's Director of Human Resources. (Davis Dep., p. 13; Johnson Dep., p. 48).

In 2020, Parma Care Center was impacted by COVID-19 and implemented necessary steps and procedures in order to minimize COVID-19's impact on its staff and residents. Mr. Johnson testified that Defendant proactively acquired personal protective equipment ("PPE") for all staff members and underwent regular infectious-disease inspections by the Ohio Department of Health, acquiring only passing scores in compliance with state standards. (Johnson Dep., pp. 38-40; Johnson Decl. ¶ 13).

In late March of 2020, Ms. Nuttall was exposed to a patient at Parma Care Center who had contracted COVID-19. (Nuttall Dep., p. 63; Nuttall Decl. ¶ 2). Shortly afterward, Plaintiff testified she began experiencing COVID-19 symptoms and was examined by her physician, Dr. Dhia Aldoori, MD, on March 30, 2020, during a virtual visit using video-conferencing software. (Nuttall

2

Dep., 66-67; Nuttall Decl. ¶ 4). Dr. Aldoori diagnosed Ms. Nuttall with a viral upper respiratory tract infection and advised her to stay home for ten days. (Nuttall Dep., pp. 72, 78, 87-89; 91). Over the course of her illness, Plaintiff was not prescribed any medication and was never tested for COVID-19 or COVID-19 antibodies. She was instructed to monitor symptoms and take over-the-counter medications as needed. (Nuttall Dep., pp. 66, 105). After her doctor's visit, the Cuyahoga County Board of Health issued an Order of Isolation to Plaintiff, advising that pursuant to state law, she was to quarantine until "deemed non-communicable by the Health Commissioner and therefore no longer pose[d] a substantial threat to the health of the public." (Nuttall Decl. ¶ 7).[2]

On the same day, Ms. Nuttall notified Defendant by phone and Mr. Johnson by text that she was instructed to quarantine for ten days. (Nuttall Dep., pp., 72, 78, 91; Johnson Dep., p. 41-42; Johnson Decl. ¶ 7). On April 3, 2020, Ms. Nuttall emailed Ms. Davis inquiring how to proceed with her absence, and Ms. Davis advised she use available sick or vacation time and file for unemployment. (Davis Dep., p. 14-16); Nuttall Dep. p. 119).[3] On April 7, 2020, Ms. Nuttall contacted her doctor while still self-quarantining, and requested a letter be sent to Defendant directing she be permitted to continue quarantine as she did not feel comfortable returning to work

---

[2] The isolation order recommends isolation until symptom free for 72 hours, or 7 days since symptoms first appeared. Defendant argues that Ms. Nuttall does not know the exact date of the onset of symptoms, and if her systems first appeared on March 30, 2020, at the latest, April 6, 2020 was the date the seven-day isolation period ordered by the Board of Health isolation order ended and April 9, 2020 would have been the end date for her Doctor's recommended ten-day self-quarantine.

[3] Ms. Davis testified that Ms. Nuttall corresponded with her via email, inquiring "If I use my vacation days up and I'm still on isolation, do I file for unemployment?" (Davis Dep., p. 15). Ms. Nuttall now alleges in her briefings that at or around this time, she proved a "serious health condition" and notice to take FMLA leave, triggering Defendant's obligation to provide her with requisite FMLA documentation. Ms. Nuttall also alleges that, unbeknownst to her, Defendant intended to replace her no later than three days after learning for her need of absence, as Mr. Johnson testified to the authenticity of an April 2, 2020 advertisement for the role of Activities Director. (Johnson Dep. pp. 106-107).

because her immune system was low. (Nuttall Dep., pp. 92-93).[4] Dr. Aldoori did not send the requested correspondence. (Davis Dep., p. 16).

The record shows that on April 10, 2020, Ms. Nuttall communicated via email to Mr. Johnson her concerns regarding contracting COVID-19 and her hesitancy to return to work, inquiring which duties could be performed from home. (Nuttall Dep., pp. 106; 113-115; Johnson Dep. pp. 48-50, 108-110).[5] On April 16, 2020, Ms. Nuttall sent an email to Mr. Johnson, informing him that she had not yet been cleared to return to work and a follow-up appointment with her physician was pending. (Nuttall Dep., pp. 113-114). On April 17, 2020, Plaintiff had a virtual follow-up examination with Dr. Aldoori and was advised that she was cleared to return to work. (Nuttall Dep., p. 114; Nuttall Decl. ¶ 9).[6]

The record does not show any instance of Plaintiff explicitly requesting to take FMLA leave before her upper respiratory tract infection diagnosis or during her period of illness and self-quarantine. (Johnson Dec. ¶ 11). Defendant argues Plaintiff remained at home after the expiration of both her seven-day isolation period and ten-day self-quarantine, did not provide documentation for remaining at home, and failed to express intent to return to work upon being cleared by her physician on April 17, 2020. Plaintiff argues she notified Mr. Johnson on April 17, 2020 by voicemail of her clearance and intent to return, and on April 21, 2020, Mr. Johnson informed

---

[4] Ms. Nuttall wrote: "I don't feel I am ready to return to work. You had me out for 10 days. My work isn't very cooperative and I would need a note to be out of work any additional time" (Nuttal Dep., p. 93).

[5] In Summer 2019, during which time period Ms. Nuttall was unable to report to work due to a back injury and completed FMLA paperwork related to the injury, she was ultimately instructed not to take FMLA leave and was instead advised to work from home. (Nuttall Decl. ¶ 11).

[6] Ms. Nuttall alleges that shortly after she was cleared to return to work, Mr. Johnson sent her an email informing her that her position was no longer available and that she could apply for the assistant to the Activities Director role. Mr. Johnson testified that if Ms. Nuttall had wanted to remain in the Activities Director role, "she would be here. So no, why would I give her an opportunity for something that she's obviously expressed no desire in doing." (Johnson Dep., p. 101).

Plaintiff that a replacement for the Activities Director position had been found and suggested she apply for the role of the Director's assistant. (Nuttall Dep., pp. 114-117; Johnson Dep., pp. 92-94). In August of 2020, Defendant ultimately filled the position of Activities Director. (Johnson Dep., p. 34).

Plaintiff brought her action for interference under the FMLA against Defendant Parma Care Center on June 9, 2020, alleging that she suffered a "serious health condition" entitling her to FMLA leave, and Defendant's failure to provide her with the requisite FMLA notices and a period of FMLA leave interfered with her statutory rights, directly resulting in her termination. (*Complaint*, ECF #1, ¶¶ 18-23).

On August 30, 2021, Defendant and Plaintiff filed cross motions for summary judgment pursuant to Fed. R. Civ. P. 56 (ECF #18 and #20), wherein Defendant argues Ms. Nuttall cannot prove the elements of a claim for interference because Plaintiff did not suffer a FMLA-qualifying condition, she neither requested nor gave notice of an intent to take FMLA leave, and Defendant never interfered with or denied Plaintiff her rights under the statute. Ms. Nuttall argues her case is a straightforward violation of the FMLA; Defendant did not recognize Plaintiff's illness as a "serious health condition" entitling her to leave, it failed to provide her with the FMLA requisite written notice and a period of FMLA-leave, and these failures resulted in a denial of FMLA rights.

On September 28, 2021, Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment (ECF #21) and on September 29, 2021, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment. (ECF #22). Defendant filed a Reply in Support of its Motion on October 12, 2021. (ECF #23). Plaintiff did not file a reply.

5

## II. ANALYSIS

### A. **Standard of Review**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806 (6th Cir. 2011). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Although evidence may be presented in support of a summary judgment motion, the moving party need not support its motion with affidavits or similar materials that negate the non-mover's claim(s) if they can otherwise show an absence of evidence supporting the non-mover's case. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000). The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d

476, 479 (6th Cir. Much. 1996) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issue

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250.

### B. The Family and Medical Leave Act ("FMLA")

The Court has thoroughly and exhaustively reviewed the claims raised by Ms. Nuttall in this action, the parties' Motions for Summary Judgment, the responsive briefings, the record, and all relevant authority. The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (the "FMLA") entitles eligible employees to a total of twelve (12) weeks of leave per year for various reasons, including "a serious health condition that makes the employee unable to perform the functions" of his or her position. 29 U.S.C. § 2612(a)(1)(D).

The Act entitles an eligible employee who takes leave under § 2612 for the intended purpose of the leave to be reinstated upon his or her return from leave to the position held prior to the leave or to an equivalent position. § 2614(a)(1). "The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.'" *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. Mich. 2006).

#### i. *Prima Facie* Case for Interference

The interference provision of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided in [the Act.]" 29 U.S.C. § 2615(a)(1). A *prima face* case of FMLA interference requires the plaintiff to show: (1) he is an eligible employee; (2) the defendant is an employer as defined in the Act; (3) he was entitled to leave under the FMLA; (4) he gave defendant notice of his intention to take leave; and (5) the defendant denied him FMLA benefits to which he was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761; citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

Parma Care Center does not dispute that Plaintiff is an eligible employee and that Defendant is a covered employer. Defendant does argue that Plaintiff was not entitled to FMLA leave in March or April of 2020 because she did not suffer an FMLA-qualifying condition and failed to provide adequate notice to her employer of any intent to take FMLA leave for her period of self-quarantine. Because Plaintiff failed to make the requisite showing, Defendant argues it had no additional notice obligations with respect to eligibility and Plaintiff cannot show any instance where Defendant denied, restrained, or otherwise interfered with Ms. Nuttall's FMLA rights. Finally, Defendant argues it had no obligation to restore Ms. Nuttall to the Activities Director role.

Ms. Nuttall refutes Defendant's position, arguing: (1) her March 2020 diagnosis and quarantine were a "serious health condition" entitling her to FMLA leave and she provided Defendant with sufficient notice of her intent to take FMLA leave for this illness; (2) Defendant's failure to provide her with an FMLA eligibility notice and related paperwork in March of 2020 interfered with her rights under the statute; and (3) Defendant acted unlawfully and denied her FMLA rights to which she was entitled by failing to restore her to the position of Activities Director.

For the reasons that follow, the Court finds Ms. Nuttall fails to prove the essential elements of a *prima facie* case for interference and Defendant is entitled to summary judgment as a matter of law.

### 1. Plaintiff's Entitlement to FMLA Leave

Pursuant to the FMLA, an eligible employee is entitled to leave for, among other things, a serious health condition that makes the employee unable to perform their job, or to care of a spouse or parent who has a serious health condition. 29 U.S.C. § 2612. A plaintiff cannot establish a *prima facie* case of FMLA interference without first demonstrating that she suffered from a "serious

9

health condition." *See Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F.App'x 330, 337 (6th Cir.). "Not all medical problems are subject to the FMLA. It is a plaintiff's burden to establish that medical problems are severe enough to warrant the FMLA protection." *See Lackey v. Jackson Cnty.*, 104 F.App'x 483, 490 (6th Cir. 2004).

The FMLA defines "serious health condition" as an illness, impairment, or physical or mental condition that involves "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). A serious health condition involving "continuing treatment by a health care provider" includes any one or more of the following:

> (a) Incapacity and treatment. "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that involves:"
>
>> (1) Treatment of two or more times, within 30 days of the first day of incapacity…by a health care provider;
>>
>> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider;
>>
>> (3) The requirements in paragraphs (a)(1) and (2)…for treatment by a healthcare provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

29 C.F.R. § 825.115. The FMLA defines "incapacity" as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i).

Parma Care Center argues that Ms. Nuttall cannot prove she was entitled to FMLA-protected leave because she did not suffer a "serious health condition" within the meaning of the statute. "Whether an illness qualifies as a serious health condition under the FMLA is a legal

question which the court must determine." *Alston v. Sofa Express, Inc.,* No. 2:06-cv-0491, 2007 U.S. Dist. LEXIS 79719, 2007 WL 3071662, at *8 (S.D. Ohio Oct. 19, 2007). "A plaintiff may not avoid summary judgment on this issue by simply alleging his illness to be a serious health condition." *Id.*

Federal regulations generally exclude (unless complications arise) conditions like the "common cold, the flu, ear aches, upset stomach…" as they do not meet the definition of a "serious health condition" and thus do not qualify for FMLA leave. 29 C.F.R. § 825.113(d). While an order to isolate or quarantine with respect to COVID-19 may seemingly appear to qualify as an instance intended for protection by the FMLA, the U.S. Department of Labor has clearly stated that currently, federal law generally "does not require employers to provide paid leave to employees who are absent from work because they are sick with COVID-19, have been exposed to someone with COVID-19, or are caring for someone with COVID-19." U.S. Department of Labor.[7]

With respect to Plaintiff's upper respiratory diagnosis, "[a] regimen of continuing treatment that includes the taking of over-the counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." 29 C.F.R. § 825.113(c).

During her ten-day quarantine period, Plaintiff had one virtual visit with her physician and was never prescribed medication; rather, she was advised to monitor her symptoms, rest, and take over-the-counter medication as needed. While Ms. Nuttall had concerns regarding returning to work because of the potential for COVID-19 exposure and spread, and requested a note permitting

---

[7] Available at:
https://www.dol.gov/agencies/whd/fmla/pandemic#:~:text=Currently%2C%20federal%20law%20generally%20does,for%20someone%20with%20COVID%2D19.

her to prolong her self-quarantine, her doctor never sent the requested correspondence, and she was cleared to return to work on April 17, 2020.

The Court finds, based on the record and regulatory guidance, that a diagnosis of an upper respiratory infection is not a qualifying event contemplated by the FMLA. However, Plaintiff does raise a genuine issue with respect to her physician-directed period of self-quarantine. A "serious health condition" involves either "inpatient care…" or "continuing treatment by a health care provider." 29 U.S.C. § 2611.11. Plaintiff alleges she satisfies her burden of proving a condition "involving continuing treatment" because she received treatment twice by her health care provider within 30 days of the onset of her incapacity as her quarantine constitutes "a period of incapacity of more than three, consecutive, full calendar days." 29 C.F.R. § 825.115(a). While "treatment" has generally referred to an "in-person visit" to a health care provider, Plaintiff directs the Court's attention to the Department of Labor's guidance determining that in light of the COVID-19 pandemic, telemedicine may satisfy the regulatory requirement of an "in-person visit."[8]

As "incapacity" requires a showing of the "inability to work, attend school or perform other regular daily activities due to the serious health condition…", Plaintiff raises a legitimate question as to whether her period of quarantine rendered her incapacitated for purposes of performing her essential work duties.[9] While the Court is inclined to find, based on the applicable guidance and

---

[8] Plaintiff raises the argument that she carries her burden with respect to the requirement that she received treatment twice by a health care provider within 30 days of the onset of incapacity, arguing that in light of the circumstances surrounding COVID-19, the Department of Labor has determined that telemedicine may satisfy the regulatory requirement of an in-person visit as it "typically involves face-to-face examinations or treatment of patients by remote video conference…". Available at: https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/fab_2020_8.pdf.. Defendant argues the U.S. Department of Labor Bulletin No. 2020-8, referenced by Plaintiff was not issued until December of 2020, months after the alleged "serious health condition" at issue, and no such guidance existed at the time of her illness.

[9] Mr. Johnson testified during his deposition: "If you can't be there, you can't provide face-to-face activities, which is an essential part of that position." (Johnson Dep. pp. 89-90).

the record, that Ms. Nuttall did not suffer a qualifying "serious health condition" entitling her to FMLA leave, the Court finds Plaintiff raises a genuine issue of material fact with respect to her physician ordered self-quarantine.

### 2. Plaintiff's Notice to Defendant to Take FMLA Leave

Even accepting the contention that Plaintiff's March 2020 illness qualifies as a "serious health condition" under the FMLA, the Court agrees Defendant is entitled to summary judgment as a matter of law because Ms. Nuttall did not provide Defendant with sufficient notice of an intent to take FMLA leave in Spring of 2020 and further cannot show how Defendant restrained, denied, or otherwise interfered with Plaintiff's exercise of rights under the FMLA.

In order to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting leave. *Brohm v. JH Props, Inc.*, 149 F.3d 517, 523 (6th Cir. Ky. 1998). An employer seeking leave "must give the employer enough information to reasonably conclude that an event described in the FMLA § 2612(a)(1) has occurred." *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2006). The Sixth Circuit has noted that where the 'Plaintiff does not expressly request [FMLA] leave, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Wanner v. Under Armour, Inc.*, 2020 U.S. Dist. LEXIS 239659 (quoting *Rentz v. Hosp.*, 195 F. Supp. 3d 933, 941 (E.D. Mich. 2016).

Here, Defendant argues Plaintiff did not reasonably apprise it of any alleged intent to take FMLA leave. Plaintiff communicated minimal detail regarding her diagnosis and her need to quarantine, a request Defendant found appropriate and therefore approved. The record does not show Ms. Nuttall ever provided Defendant with any degree of detail or specificity; she did not allege her symptoms were atypical, particularly severe, or any anticipation of prolonged symptoms

or illness such that she would remain home past the expiration of her quarantine. In fact, she testified that she was able to perform some job responsibilities while working remotely at home.

Further still, Plaintiff advised Defendant that her symptoms had resolved, and she was cleared by her physician to return to work on April 17, 2020. While Defendant expressed apprehension regarding the virulence of COVID-19 and potential for spread at the facility while completing her quarantine, Defendant could not have reasonably been expected to conclude that these remarks were Plaintiff's request to take FMLA leave, or to believe that concern regarding COVID-19 is a FMLA-qualifying event. Defendant does not argue that Plaintiff failed to comply with any particular policy, but rather maintains that based on the information Ms. Nuttall did provide, Defendant could not have reasonably ascertained under the circumstances that Plaintiff sought FMLA leave.

Defendant's position is further bolstered by the fact it provided Plaintiff with FMLA paperwork in the Summer of 2019. Under 29 C.F.R. § 825.300(b)(1), an employer must notify an employee of FMLA eligibility "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason […]." "Employee eligibility is determined (and notice must be provided) at the commencement of the first instance. However, "[i]f, at the time an employee provides notice of a subsequent need for FMLA leave during the applicable 12-month period due to a different FMLA-qualifying reason, and the employee's eligibility status has not changed, no additional eligibility notice is required." 29 C.F.R. § 825.300(b)(3).

Plaintiff does not demonstrate how Defendant's failure to provide FMLA paperwork again in March of 2020 restrained or otherwise interfered with her ability to pursue FMLA leave. "An employer's failure to comply with the notice requirements of the FMLA only supports a cause of

action where the inadequate notice effectively interferes with plaintiff's statutory rights." *Fink v. Ohio Health Corp.*, 139 Fed.Appx. 667, 671 (6th Cir. 2005). The record shows Ms. Nuttall had knowledge of her eligibility since late Summer of 2019 and was familiar with the FMLA process of completing paperwork. Plaintiff testified that she received and completed FMLA paperwork for this prior injury in August of 2019. (Nuttall Dep., pp. 54-55). As this timeframe occurred within 12 months of her upper respiratory infection diagnosis, and Plaintiff's eligibility status was unchanged, Parma Care Center appropriately believed it had no obligation to once again provide a notice of eligibility under 29 C.F.R. § 825.300(b)(3).

Plaintiff fails to prove she provided sufficient notice of her intent to take FMLA leave in March of 2020, and even if she had, the Court cannot find that Ms. Nuttall's rights were interfered with as a matter of law. Because Defendant had no notice obligations under 29 C.F.R. § 825.300, Plaintiff cannot argue that Defendant needed to provide an additional rights and responsibilities notice under 29 C.F.R. § 825.300(c) or a designation notice under 29 C.F.R. § 825.300(d) because it reasonably concluded leave was not being sought for a FMLA-qualifying event. Finally, Parma Care Center was not required to request medical certification from Plaintiff because it never questioned the appropriateness of Plaintiff's quarantine and permitted her to quarantine as many days as required by her physician. (Nuttall Dep. pp. 70, 78).[10]

The Court finds Defendant was reasonable in concluding that Plaintiff did not seek leave under the FMLA for her illness in March of 2020. Accordingly, Defendant did not fail to meet any notice requirements under the statute, and Plaintiff cannot show any interference with or denial of rights resulting therefrom. Because Plaintiff did not prove she qualified for protections under the

---

[10] "An employer may require that an employee's leave […] due to the employee's own serious health condition […] be supported by a certification issued by the health care provider of the employee." 29 C.F.R. § 825.305(a). An employer should make such a request within five business days after leave commences, or the request can be made later "if the employer has reason to question the appropriateness of the leave or its duration." 29 C.F.R. § 825.305(b).

FMLA, the Court need not address her allegation that Defendant was required to permit her to return to the role of Activities Director after her leave. Plaintiff fails to prove her *prima facie* case for interference under the FMLA and the Court grants summary judgment in favor of Defendant.

## III. CONCLUSION

For the foregoing reasons, the Court finds Defendant is entitled to summary judgment on Ms. Nuttall's FMLA interference claim. The Motion for Summary Judgment filed by Defendant, Parma Care Center (ECF #18) is hereby GRANTED. This case is hereby TERMINATED. All other pending motions are terminated.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: December 14, 2021